# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued September 15, 2008      Decided January 6, 2009

No. 07-5251

IN RE: SEALED CASE

Appeal from the United States District Court
for the District of Columbia
(No. 03cv02071)

*David P. Sheldon* argued the cause for appellant. With him on the brief was *Raymond J. Toney*.

*Lanny J. Acosta, Jr.*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Jeffrey A. Taylor*, U.S. Attorney, *R. Craig Lawrence*, Assistant U.S. Attorney, and *Brian C. Baldrate*, Special Assistant U.S. Attorney.

Before: ROGERS, TATEL, and KAVANAUGH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* TATEL.

Opinion concurring in the judgment filed by *Circuit Judge* KAVANAUGH.

TATEL, *Circuit Judge*: Appellant, a member of the Vermont Army National Guard, sued the Department of the

Army, claiming that the Vermont Army National Guard released his personal information in violation of the Privacy Act. The parties agree that the Privacy Act protects state guardsmen while on active federal duty. Appellant, however, was not on active federal duty at the time his personal information was released. For the reasons set forth below, we hold that the Privacy Act protects guardsmen even when they are not on active federal duty.

## I.

Though organized in part through the states, the National Guard functions as "an integral part of the first line defenses of the United States," 32 U.S.C. § 102. Its organization stems from Article I, Section 8 of the U.S. Constitution, which gives Congress authority "[t]o provide for organizing, arming, and disciplining, the militia, and for governing such part of them as may be employed in the service of the United States, reserving to the states respectively, the appointment of the officers, and the authority of training the militia according to the discipline prescribed by Congress." U.S. CONST. art. I, § 8. Through the Department of Defense's National Guard Bureau, the Department of the Army extends federal recognition to state National Guard units that comply with federal criteria; it may withdraw recognition if a unit ceases to comply. 10 U.S.C. § 10503(8). These state National Guard units are known as the Army National Guard. 32 U.S.C. § 101(4). Together, all federally recognized state units comprise one of the reserve components of the Army, known as the Army National Guard of the United States. 10 U.S.C. § 10105. As the Supreme Court has explained, "[t]he Federal Government provides virtually all of the funding, the materiel, and the leadership for the State Guard units." *Perpich v. Dep't of Def.*, 496 U.S. 334, 351 (1990). Although states are responsible for training the Army National Guard and rely on their units under gubernatorial command "to respond to local

emergencies," *Perpich*, 496 U.S. at 351, such training must conform to regulations prescribed by the Secretary of the Army, 32 U.S.C. §§ 501–505. The National Guard thus plays a dual role, operating under joint federal and state control.

The Privacy Act, 5 U.S.C. § 552a, which covers "agenc[ies]" including "military department[s]," §§ 552(f)(1), 552a(a)(1), "safeguards the public from unwarranted collection, maintenance, use and dissemination of personal information contained in agency records." *Bartel v. FAA*, 725 F.2d 1403, 1407 (D.C. Cir. 1984). The Act protects private information from unnecessary disclosure and enables individuals to correct errors in their files. § 552a(b), (d). At issue here are the Act's non-disclosure provisions.

Appellant, a member of the Vermont Army National Guard, brought a Privacy Act suit against the Department of the Army, alleging that a civilian National Guard employee and other persons had improperly disclosed appellant's highly sensitive personal information, causing him emotional, psychological, and financial harm. Although not disputing appellant's assertion that the Vermont Army National Guard is federally recognized, the Department moved to dismiss, arguing that the Vermont Army National Guard is not an "agency" subject to the Privacy Act. The district court, though recognizing that members of state Army National Guard units are simultaneously members of the Army National Guard of the United States, nonetheless held that the Army National Guard is an agency subject to the Privacy Act only when on active federal duty. Because the Vermont Army National Guard was not on active federal duty at the time of the alleged disclosure, the court granted the motion to dismiss.

The guardsman appeals. Our review is de novo. *Muir v. Navy Fed. Credit Union*, 529 F.3d 1100, 1108 (D.C. Cir. 2008).

**II.**

Although the National Guard's dual federal-state status has been described as "murky and mystical," *Bowen v. United States*, 49 Fed. Cl. 673, 676 (2001), this case presents a straightforward question of statutory interpretation: does the Privacy Act's definition of "agency" extend to National Guard units only when on active federal duty? Answering yes, the Department emphasizes the level of state control over National Guard units when not on active federal duty. We agree with appellant, however, that under the plain language of the relevant statutes, the Privacy Act's definition of agency includes federally recognized National Guard units at all times.

The Privacy Act adopts the Freedom of Information Act's (FOIA) definition of agency. § 552a(a)(1); *see also Dong v. Smithsonian Inst.*, 125 F.3d 877, 878 & n.1 (D.C. Cir. 1997). Under FOIA, the term "agency" includes "any . . . military department." § 552(f)(1). Accordingly, we must determine whether the Vermont Army National Guard is part of a "military department." The U.S. Code clearly answers this question in the affirmative.

Section 101 of Title 10 defines "military department" to include "all . . . reserve components . . . under the control or supervision of the Secretary of the department." 10 U.S.C. § 101(a)(6). As the Department concedes, Appellee's Br. 8, the Army National Guard of the United States is one of those reserve components. 10 U.S.C. § 10101(1). Section 10105, in turn, provides that the Army National Guard of the United States "consists of," in part, "federally recognized units and

organizations of the Army National Guard." § 10105. Given that the government nowhere disputes appellant's assertion that the Vermont Army National Guard is federally recognized, the Privacy Act applies. Put another way, because it is undisputed that the Vermont Army National Guard enjoys federal recognition, it is part of the Army National Guard of the United States, which is a reserve component, which is part of the military department of the Army, which is included in the Privacy Act's definition of "agency." Although it takes several steps to reach this conclusion, the result is clear.

At oral argument, Department counsel acknowledged the accuracy of each of these steps in the logical chain, conceding that the Vermont Army National Guard is always part of the Army National Guard of the United States even when not on active federal duty. Oral Arg. at 14:21. The Department nonetheless seeks to break the chain by relying primarily on two other provisions: 10 U.S.C. §§ 10106 and 10107.

Section 10106 says, "The Army National Guard while in the service of the United States is a component of the Army." 10 U.S.C. § 10106. According to the Department, this provision means that the Vermont Army National Guard is part of a military department and thus subject to the Privacy Act *only* while in the service of the United States. Section 10106, however, says nothing about a state National Guard unit's status when not in the service of the United States, nor does it remove state guard units from their continuing status as part of the Army National Guard of the United States. Rather, section 10106 addresses one of the two ways in which Army National Guard units may be called into active federal service. First, state guard units may be ordered to active federal duty as reserves of the Army through the Army National Guard of the United States, 10 U.S.C. § 12301, in

which case the Army National Guard of the United States, always a reserve component of the Army, provides the status under which the guard units serve. Second, in three specific circumstances, guard units may be called up directly into federal service from their state militia status—the President may "call into Federal service members and units of the National Guard of any State" in case of invasion, rebellion, or an inability to execute the laws of the United States with regular forces. 10 U.S.C. § 12406; *see also Perpich*, 496 U.S. at 350 n.21 (describing the "distinct statutes" for "activating the National Guard of the United States" and for "calling forth the . . . National Guards of the various States"). Section 10106, which like section 12406 refers to the "National Guard" not the "National Guard of the United States," addresses the status of guard units called up in these three specific circumstances. In such circumstances, because the guard units do not serve as part of an already existing reserve component (the Army National Guard of the United States), they require some other component status. Section 10106 fills this gap, providing that the Army National Guard becomes its own component of the Army when called up in this capacity. In other words, section 10106 establishes that when the Army National Guard, as such, is called directly into federal service (as opposed to when activated through the Army National Guard of the United States), it constitutes a separate component of the Army (rather than serving as an activated reserve of the Army). Section 10106 therefore in no way undermines our view that the Vermont Army National Guard is part of a *reserve* component (and thus of a military department) regardless of federal duty status.

Section 10107 is no more helpful to the Department. It provides that "[w]hen not on active duty, members of the Army National Guard of the United States shall be administered, armed, equipped, and trained in their status as

members of the Army National Guard." 10 U.S.C. § 10107. As its plain language indicates, section 10107 addresses the status of individual servicemen, not the status of state Army National Guard units within the military department. Because the Privacy Act applies to agencies, not individuals, our concern here is with the organizational status of National Guard units, meaning that section 10107 has nothing to do with the issue before us. *See Martinez v. Bureau of Prisons*, 444 F.3d 620, 624 (D.C. Cir. 2006) (dismissing Privacy Act and FOIA claims against individuals because "[b]oth statutes concern the obligations of agencies as distinct from individual employees in those agencies"). In any event, nothing in section 10107 strips non–federally activated guardsmen of their membership in the Army National Guard of the United States, nor could it. Under Title 10, "a person who enlists in the Army National Guard . . . shall be concurrently enlisted . . . as a Reserve of the Army for service in the Army National Guard of the United States." 10 U.S.C. § 12107(b)(1). Indeed, by its terms section 10107 confirms that non–federally activated guardsmen remain "members of the Army National Guard of the United States." § 10107.

We read sections 10106 and 10107 as demonstrating that what changes when the Vermont Army National Guard passes in and out of active federal duty is the chain of command, not the guard's status as an agency under the Privacy Act. When called into federal service under section 12406, the Army National Guard, as a "component of the Army," § 10106, operates under the direct command of the Secretary of the Army. Even when not serving in this capacity, however, guard units remain part of the Army National Guard of the United States, § 10105, a reserve component that is itself under the control and supervision of the Secretary. Similarly, although when not federally activated as reserves of the Army under section 12301, guardsmen regain state status and report

directly to the governor, § 10107, their guard unit nonetheless retains its status as part of the Army National Guard of the United States, § 10105.

In sum, neither section 10106 nor section 10107 deprives the Army National Guard of its continuous status as part of the Army National Guard of the United States. That can occur only if the Secretary withdraws the Army National Guard's federal recognition. § 10105; *see also Nelson v. Geringer*, 295 F.3d 1082, 1093 (10th Cir. 2002) (interpreting analogous provisions under Title 10 applicable to the Air National Guard of the United States and holding that "[e]ven when the Guard is not federally activated . . . the Wyoming Air and Army National Guard units remain reserve components of the United States Air Force and Army respectively, and most if not all functions performed by the state are subject to federal requirements and regulations"). As long as the Secretary has not withdrawn the Vermont Army National Guard's federal recognition, it is part of an agency for purposes of the Privacy Act whether or not federally activated.

We think it worth noting that the Department's own regulations and interpretation of the Privacy Act treat the Act as applicable to the National Guard without regard to federal duty status. Army Regulation 340-21, issued pursuant to the Privacy Act, sets forth the Army Privacy Program and "applies to the Active Army, *the Army National Guard*, the U.S. Army Reserve, and the Army and Air Force Exchange Service." U.S. DEP'T OF THE ARMY, REG. 340-21, THE ARMY PRIVACY PROGRAM i (1985), *available at* http://www.army. mil/usapa/epubs/pdf/r340_21.pdf (emphasis added); *see also* U.S. DEP'T OF THE ARMY, REG. 22-55, THE DEPARTMENT OF THE ARMY FREEDOM OF INFORMATION ACT PROGRAM i (1997), *available at* http://www.army.mil/usapa/epubs/pdf/

r25_55.pdf (containing identical language applying FOIA regulations to the National Guard). Even more revealing, because the Privacy Act generally requires agencies to obtain written consent for and to keep an accounting of disclosures of information outside the agency, § 552a(b)(1), (c), if the National Guard and the Army were not part of the same agency, the Army would have to obtain consent and provide an accounting virtually every time it shared records with a National Guard unit. The Department, however, has never interpreted the Privacy Act as requiring such action. According to an advisory opinion entitled "Applicability of the Privacy Act to National Guard Records" issued by the Defense Department's Defense Privacy Board, which oversees implementation of the Privacy Program, 32 C.F.R. § 310.9(a)(2)(i), the National Guard and the Army are part of the same agency for Privacy Act purposes. Because its analysis is particularly compelling, we quote the relevant section of the opinion in full:

> Reserve components of the Army and the Air Force include the Army and Air National Guards of the United States respectively, which are composed of federally recognized units and organizations of the Army or Air National Guard and members of the Army or Air National Guard who are also Reserves of the Army or Air Force. 10 U.S.C. §§ 3077 and 8077 [now 10 U.S.C. §§ 10105 and 10111]. 10 U.S.C. § 275 requires the Departments of the Army and the Air Force to maintain personnel records on all members of the federally recognized units and organizations of the Army and Air National Guards and on all members of the Army or Air National Guards who are also reserves of the Army and Air Force. Such records are "maintained" by the Army or Air Force for the purposes of the Privacy Act.

These records are not all located at the National Guard Bureau. Some are in the physical possession of the state adjutant general. However, records need not be physically located in the agency for them to be maintained by the agency. *See* OMB Guidelines. *Records located at the state level are under the direct control of the Army and Air Force in that they are maintained by the state under regulations (NGR 600200 and AFR 3544) implementing 10 U.S.C. § 275, and promulgated by authority of the Secretaries of the Army and the Air Force under 10 U.S.C. § 280. Therefore, the records are Army or Air Force records and subject to the provisions of the Privacy Act.*

*That the records are subject to the Privacy Act does not mean they cannot be used by the members of the state national guards. The state officials using and maintaining the records are members of the reserves (members of the Army or Air Force National Guard of the United States). Disclosure to them in performance of their duties is disclosure within the Department of Defense not requiring a published routine use or an accounting.*

DEFENSE PRIVACY BOARD, U.S. DEP'T OF DEF., ADVISORY OPINION 5, APPLICABILITY OF THE PRIVACY ACT TO NATIONAL GUARD RECORDS (1992) (emphasis added), *available at* http://www.defenselink.mil/privacy/opinions/op0005.htm. Based on the same straightforward statutory interpretation we adopt here, then, the Department itself has concluded that the members of the National Guard and the Army are part of the same agency for Privacy Act purposes.

Although finding this statutory analysis "alluring," the district court ultimately rejected it given "the substantial body of case law that has explained the National Guard's hybrid federal-state status." *In re Sealed Case*, No. 03-cv-02071, Slip op. at 6 (D.D.C. May 25, 2007). In particular, the district court relied on *Perpich v. Department of Defense*, in which the Supreme Court held that nothing in the Militia Clauses requires gubernatorial consent to Congress's calling up the National Guard for training outside the United States. 496 U.S. at 354–55. In reaching that conclusion, the Court noted that all guardsmen enlist simultaneously in both the National Guard and the National Guard of the United States, *id.* at 345, and that "a member of the Guard who is ordered to active duty in the federal service is thereby relieved of his or her status in the State Guard for the entire period of federal service," *id.* at 346. Although *Perpich* thus stands for the proposition that federally activated guardsmen temporarily lose their State National Guard status, nothing in the decision's holding severs the continuous link between the Army National Guard of the United States and federally recognized units of the Army National Guard when not on active federal service. § 10105; *see also Matreale v. N.J. Dep't of Military & Veterans Affairs*, 487 F.3d 150, 156 (3d Cir. 2007) (interpreting *Perpich* as holding only that a guardsman loses state status while on federal duty, not that a guardsman loses federal status when deactivated). Moreover, *Perpich* does not involve the Privacy Act, and as we demonstrated above, the Privacy Act is clear: National Guard units, whether activated or not, are part of an "agency." Nor do the other appellate decisions the district court cites and the parties debate compel a different result. None of those decisions deals with the Privacy Act or interprets the Act's definition of "agency." Moreover, to the extent the cases discuss the federal or state nature of a particular act by a National Guard member, they have little to do with the

question we face here, i.e., whether, as an organization, a non–federally activated National Guard unit falls within the Privacy Act's definition of "agency."

The Department reminds us that the Privacy Act constitutes a waiver of sovereign immunity that "'must be unequivocally expressed in statutory text.'" *Webman v. Fed. Bureau of Prisons*, 441 F.3d 1022, 1025 (D.C. Cir. 2006) (quoting *Lane v. Pena*, 518 U.S. 187, 192 (1996)). True enough, but the Privacy Act clearly waives sovereign immunity for improper disclosures by agencies, § 552a(g), and expressly defines "agency" as including military departments, § 552(f)(1). And as we have demonstrated above, the Army National Guard is clearly part of a military department. Though requiring several steps to discern, the waiver is "unequivocally expressed in statutory text." *Webman*, 441 F.3d at 1025.

In still another effort to avoid the Act's plain language, the Department invokes the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2672, which, like the Privacy Act, defines "[f]ederal agency" as including "military departments," 28 U.S.C. § 2671. The FTCA expressly waives immunity for torts committed by an "employee of the government," a term that includes both agency employees and, separately, National Guard members "while engaged in training or duty" under specific statutory provisions. § 2671. According to the Department, "[i]n contrast to the FTCA, where Congress unambiguously waived immunity for actions of the National Guard in limited circumstances, Congress did not provide such a specific waiver of sovereign immunity for State National Guard units under the Privacy Act." Appellee's Br. 19. That Congress expressly defined "employee" under the FTCA does not, however, imply that it must define "agency" under the Privacy Act more

specifically. And Congress's decision to limit FTCA liability to acts by National Guard members in specific situations neither suggests nor even hints that the National Guard itself qualifies as an agency under the Privacy Act only in those situations.

Finally, the Department warns that were we to interpret the Privacy Act as extending to non–federally activated Army National Guard units, "all State National Guards and their members would always be on federal status and could always be seen as federal actors," meaning that "[t]he United States would face potential liability for any and all actions committed by State Guard units and members regardless of the capacity in which the unit or the individual was purportedly serving." Appellee's Br. 15–16. We disagree. Determining what laws apply to the National Guard is a question of statutory interpretation, whose resolution necessarily turns on the particular provision at issue in each case. Here the statutes could hardly be clearer: the Privacy Act defines agency as including any military department, which includes the Army National Guard of the United States, of which a federally recognized Army National Guard is a continuous component. This conclusion says nothing whatsoever about the United States's liability under any other statute.

For the foregoing reasons, the order dismissing the complaint is reversed.

*So ordered.*

KAVANAUGH, *Circuit Judge*, concurring in the judgment: The Department of the Army is a military department, and it is therefore an agency subject to the Privacy Act. *See* 5 U.S.C. §§ 552(f)(1), 552a(a)(1); 10 U.S.C. § 101(a)(8). The Army is defined to include "reserve components" under "the control or supervision" of the Secretary. *See* 10 U.S.C. § 101(a)(6). The statutory list of reserve components includes the "Army National Guard of the United States," which is a federal entity under the control or supervision of the Secretary. § 10101(1). The Army National Guard of the United States is in turn defined to include the "federally recognized units and organizations" of the state National Guards. § 10105.

The question in this appeal concerns one of those state National Guards, the Vermont Army National Guard. It is subject to the federal Privacy Act if it is either (i) itself a "reserve component" of the Army "under the control or supervision" of the Secretary of the Army *or* (ii) a "federally recognized unit or organization" of the Army National Guard of the United States.

The Vermont Army National Guard is not itself a "reserve component" of the Army under the control or supervision of the Secretary. The statute lists the seven specific entities that qualify as reserve components of the armed forces. They are the Army National Guard of the United States, the Air National Guard of the United States, the Army Reserve, the Navy Reserve, the Marine Corps Reserve, the Air Force Reserve, and the Coast Guard Reserve. § 10101(1). The statute does not list state National Guards as reserve components. Even assuming arguendo that the Vermont Army National Guard were a reserve component of the federal Army, it is not under the "control or supervision" of the President, Secretary of Defense, or Secretary of the Army, except in those rare circumstances when a state Guard itself is federally called forth for domestic purposes under the

Militia Clause. *See* U.S. CONST. art. I, § 8, cl. 15 (empowering Congress to provide for "calling forth the Militia to execute the Laws of the Union, suppress Insurrections and repel Invasions"); 10 U.S.C. §§ 331-33, 12406. The majority opinion does not dispute the conclusion that the Vermont Army National Guard is not itself a reserve component of the Army under the control or supervision of the Secretary.

The trickier question in this case is whether the Vermont Army National Guard is a federally recognized unit or organization of the Army National Guard of the United States. The plaintiff alleges that it is – albeit without citations or support. I am dubious.

The Army National Guard of the United States is an umbrella federal entity that was created in 1933 as part of a federal-state effort to work around Militia Clause limits on federal use of state National Guards. The goal was to authorize federal use of state National Guard units not just for the domestic purposes specified by the Militia Clause but also for foreign wars. Under this arrangement the states ensure, in return for federal funding, that state Guard units and members become part of both the state Guard and the federal Army National Guard of the United States. This allows the Federal Government to quickly activate Guard units – as units – and deploy them into *foreign* wars, as exemplified by the many Guard units that have been activated and continue to serve in Iraq and Afghanistan. *See generally Perpich v. Department of Defense*, 496 U.S. 334 (1990); Frederick Bernays Wiener, *The Militia Clause of the Constitution*, 54 HARV. L. REV. 181, 205-10 (1940).

To implement this federal-state cooperative effort, the *members* of each state's Army National Guard are also

*members* of the federal Army National Guard of the United States. In addition, individual *units* of each state's National Guard – such as the 86th Infantry Brigade Combat Team of the Vermont Army National Guard – are also federally recognized *units* of the Army National Guard of the United States and can be ordered into active federal status in wartime.

Even though they share members and units, each state's Army National Guard and the federal Army National Guard of the United States remain "distinct organizations" – the one commanded by the state's Governor, the other commanded by the President of the United States. *Perpich*, 496 U.S. at 345.

The plaintiff here therefore appears to be legally and factually incorrect when he asserts that the Vermont Army National Guard is itself "a *federally recognized* Army National Guard *unit*." Appellant's Br. at 33 (emphases added). Consistent with the principle that the federal Army National Guard of the United States and the state Guard are separate entities that share units and members, the federal recognition process seems to envision federal recognition of units and organizations within a state's Guard, but not of the entire state Guard as an entity. *See, e.g.*, *Organization and Federal Recognition of Army National Guard Units*, Nat'l Guard Reg. 10-1 § 2-2, at 5-6. To be sure, it is conceivable that the Vermont Army National Guard as an entity in fact has been federally recognized and is thus itself part of the Army National Guard of the United States. But that seems somewhat unlikely given the governing legal structure and the apparent practice. *Cf.* NATIONAL GUARD ALMANAC 2001 141-44 (listing "Major Army National Guard Units" not including any state National Guards); United States Army Website, Organization, Units and Commands (listing

"National Guard Units" not including any state National Guards).

In any event, the parties have offered no information beyond the plaintiff's allegation about whether the Vermont Army National Guard is a *federally recognized unit or organization* of the Army National Guard of the United States – or, more to the point, about whether the person in the Vermont Army National Guard who allegedly disclosed information about the plaintiff in violation of the Privacy Act was part of a federally recognized unit or organization of the Army National Guard of the United States. If the Government produces evidence that the person who allegedly disclosed the information was not part of a federally recognized unit or organization of the Army National Guard of the United States, it presumably could prevail on a summary judgment motion.[*] I agree with the majority opinion, however, that the plaintiff's complaint cannot be dismissed on this sparse record at the motion to dismiss stage.

I respectfully concur in the judgment.

---

[*] The Government also suggests that, for Privacy Act purposes, a federally recognized state Guard unit is part of the federal Army National Guard of the United States only when the unit is ordered into active federal duty. But as the majority opinion concludes, there is no statutory support for that broad-brush theory: Under the statutory scheme, a federally recognized unit or organization of the Army National Guard of the United States is always part of the Army National Guard of the United States – and the Army National Guard of the United States in turn is a reserve component of the Army under the control or supervision of the Secretary.